STATE ex rel. JACOB C. SETZER v. DANIEL SETZER et al.

### *Marriage—Jurisdiction—Idiocy.*

1. The Courts of this State, both as succeeding to the jurisdiction of the Ecclesiastical Courts, and under our statutes, have jurisdiction to declare a marriage void *ab initio* and to grant a divorce for that reason, but a judgment declaring the marriage to have been void *ab initio*, will not have the effect of bastardizing the issue.

2. The question of whether or not a marriage was void *ab initio*, there having been a marriage *de facto*, must be tried between the parties to the marriage, and this question cannot be raised in an action by the children of such marriage, claiming as next of kin or heirs at law, in order to bastardize them.

3. So, where the plaintiff brought an action as next of kin of his father, and the jury found that when the marriage was consummated the father was an idiot and did not have capacity to enter into the contract ; *It was held,* that the issue was immaterial, and if this was the only defence the plaintiff would be entitled to a judgment *non obstante veredicto.*

4. Where two defences are pleaded, and the Court below gives judgment for the defendant on one of them without trying the other, which judgment is reversed on appeal, the case will be remanded in order that the other defence may be tried.

(*Johnson* v. *Kincade*, 2 Ired. Eq., 470; *Crump* v. *Morgan*, 3 Ired., 91; *Williamson* v. *Williams*, 3 Jones Eq., 446; *Brooks* v. *Brooks*, 3 Ired., 389; *Baity* v. *Cranfill*, 91 N. C., 293; cited and approved).

CIVIL ACTION, tried before *Shipp, Judge,* and a jury, at Fall Term, 1885, of CATAWBA Superior Court.

There was a judgment for the defendant, and the plaintiff's relator appealed.

The facts appear in the opinion.

No counsel for the plaintiffs.
*Mr. M. L. McCorkle,* for the defendants.

SMITH, C. J. In the month of August, 1859, Reuben Setzer was married to Sophronia Morcus by a justice of the peace, upon a due observance of all the formalities prescribed by law for entering into that relation. They lived together as husband and wife until the spring of 1862, when, having entered the military service of the Confederate States, the said Reuben lost his life at the battle of New Berne, in this State. The only offspring of the union was the plaintiff, who brings this action as relator upon the bond executed by the defendant, Daniel Setzer, who administered on the estate of the deceased, and the other defendant, one of his sureties, to recover his distributive share of the personal estate in the hands of the administrator. The action was begun by suing out a summons on the 13th day of August, 1883.

The answer sets up as a defence, (and this is the only matter necessary to be considered,) that the intestate was of imbecile mind from his youth up, and had not capacity to understand and enter into the marriage contract, and that, this being absolutely void, the plaintiff, their only child, was not born in lawful wedlock, and could not claim any part of the estate.

The only issue passed on by the jury, was as to the intestate's mental capacity to make an effectual marriage contract at the time of its solemnization, and the response was that he did not have such capacity.

We do not propose to examine the exceptions to the evidence offered, among which was an inquisition taken in 1855, finding the intestate to be a lunatic, and an order appointing a guardian, since the appeal must be disposed of upon the single finding of the intestate's mental incompetency, and its effect upon the relator's right as a distributee.

In *Johnson* v. *Kincade*, 2 Ired. Eq., 470, a bill in equity was filed, upon facts very much like those before us, to have declared a nullity a marriage entered into by the plaintiff, on the ground of his idiocy, and it was suggested, that as

the marriage was void *ab initio,* it was so to be considered
whenever the question came up, and the present suit could
not be maintained.   RUFFIN, C. J , asserted the jurisdiction,
not only because the Courts of Equity in this country had
succeeded to the functions of the Ecclesiastical Courts of
England, in which this jurisdiction was exercised, but be-
cause it was expressly conferred upon the Superior Courts of
Law and the Courts of Equity by law ;   Rev. Stat., ch. 39.
"The act," he remarks, " creates and confers a jurisdiction
over all matrimonial causes, and includes, necessarily, we
think, the jurisdiction to pronounce the nullity of a mar-
riage *de facto* for want of capacity."   The Court thereupon
in this suit between the parties, proceeded to pronounce the
marriage " in law null and void for the want at the time of
solemnizing the same of mental capacity on the part of said
Reese, sufficient to understand the nature of, and assent to
such a contract, and that the said Reese ought to be and is,
set free and divorced from the said Ann."

The same doctrine is re-affirmed in *Crump* v. *Morgan,* 3
Ired. Eq., 91, by the same eminent Judge, in a similar case.

In *Williamson* v. *Williams,* 3 Jones Eq., 446, a bill was
filed for an account against the guardian of the plaintiff,
and the answer set up the plaintiff's marriage with one
Cashion as a defence.   The plaintiff, anticipating the objec-
tion, alleged the marriage to be void, because of the *feme's*
youth, (she was thirteen years of age,) the practice of fraud
and artifice, with the use of some force in bringing it about,
and her want of sufficient understanding to enter into the
contract.

The Court declined to try the issue thus made, and re-
tained the cause " for further directions, to the end that the
plaintiff, if so advised, may institute proceedings in the
proper Court to obtain a decree of nullity of marriage, after
which they will be at liberty to move in this cause."

SETZER v. SETZER.

Delivering the opinion, PEARSON, J., after quoting and approving the language used in *Johnson* v. *Kincade*, that it was " convenient and fit in respect to the decent order of society, *the condition of parties, and the succession of estates*, that the validity of such a marriage should be directly the subject of judicial sentence, says: "And as the Legislature has conferred sole original jurisdiction in all applications for divorce upon the Superior Courts of Law and Courts of Equity— (Rev. Code, ch. 39, §1)—and pointed out the mode of proceeding. and the rules and regulations to be observed (§5), and required that the material facts charged in the bill or libel shall be submitted *to a jury*, upon whose verdict and *not otherwise*, the Court shall decree, (§6,) and authorize a decree from the bonds of matrimony, or that the *marriage is null and void*," (the italics in the above are in the opinion,) and after a sentence nullifying or dissolving the marriage, all and every, the duties, &c., in virtue of such marriage, shall cease and determine, with a proviso as to the legitimacy of the children, (§11), we do not feel at liberty to decide a question of such grave importance, as a thing collateral or incidental to an ordinary bill for an account, where the trial will be made, without the intervention of a jury, upon depositions which are usually taken in a defective and unsatisfactory manner." He adds: " The propriety of requiring that fact to be established by the judgment or sentence of a tribunal having sole original jurisdiction, is too manifest to require any further observation." See *Brooks* v. *Brooks*, 3 Ired., 389.

Now it is expressly provided in the Rev. Stat., ch. 39, §9, where it is decreed that " *the marriage is null and void*," or for cause not affecting its original validity, as follows : " That nothing herein contained shall be construed to extend to, affect, or render illegitimate, any child or children born of the body of the wife during the coverture."

A proviso in words essentially the same is found in the Rev. Code, ch. 39, §11, and again in Bat. Rev., ch. 37, §15.

Now if it is conceded that the validity of a marriage can be questioned in the collateral manner attempted, and when neither of the parties to it is before the Court so that it is not a judgment changing their status, it can have no greater effect upon the right of offspring than such a judicial sentence, rendered in a direct proceeding, and as those rights are protected in the one case, so must they be in the other.

The present law is more explicit and clear, and as we have had occasion to inquire into its operation in the recent case of *Baity* v. *Cranfill,* 91 N. C., 293, we will pursue the subject no further, and content ourselves by declaring the result to be, that the present verdict cannot take from the relator any of his rights as a son of the intestate, to a share in the latter's estate, nor render his birth illegitimate. The issue was therefore immaterial, and we should direct judgment for an account, but that another defence set up in the answer, to-wit : a compromise agreed upon in a former suit by the relator and his mother, has not gone before the jury, the Judge deciding that upon the finding as to the marriage, the relator could not recover.

There is error, and there must be a new trial involving the other matters of defence, and to that end this must be certified.

Error.                                    Reversed.