2345

John DOE, Appellant v. NORTH GREENVILLE HOSPITAL, Respondent.

(458 S.E. (2d) 439)

Court of Appeals

*Graves H. Wilson, Jr.*, Greenville, *for appellant.*

*Edwin B. Parkinson, Jr.*, of *Haynsworth, Marion, McKay & Guerard*, Greenville, *for respondent.*

Submitted Apr. 3, 1995.

Decided May 8, 1995; Reh. Den. June 29, 1995.

CURETON, Judge:

Appellant, John Doe,[1] sought to recover actual and punitive damages against respondent, North Greenville Hospital, based on an alleged improper release of his medical records to the insurance company providing his hospitalization coverage who, in turn, forwarded the records to his wife. In his complaint, Doe alleged two causes of action. First, for the negligent violation of federal regulations found at 42 C.F.R., Part 2, and second, for public disclosure of a private fact. The hospital's answer admitted that medical records generated during Doe's hospitalization had been released to the insurance company, but the hospital maintained the release was pursuant to a valid written authorization executed by Doe. At the hearing on the hospital's motion for summary judgment, Doe orally moved to amend his pleadings to include a claim for intentional infliction of emotional distress. The trial judge granted the hospital's motion for summary judgment, and denied Doe's motion to amend. We affirm.

Doe voluntarily checked into a substance abuse treatment center at North Greenville Hospital. On the day he was admitted, he signed a form for insurance purposes entitled "Consent To Release Information From Records Of Patients," au-

---

[1] Due to the sensitive nature of the facts and causes of action involved in this case, this court will protect appellant's anonymity.

thorizing the hospital to release his "entire record" to Provident Insurance Company, the insurance carrier providing his hospitalization coverage.

During his stay at the hospital, Due was referred for psychiatric evaluation. He was seen by Dr. David M. Jacobs, a psychiatrist employed by the Greenville Hospital System. During their session, Dr. Jacobs wrote a psychiatric consult note, the original of which became part of Doe's patient chart. This consult note made reference to Doe's troubled childhood, his childhood sexual abuse, and his subsequent problems with law enforcement authorities. Dr. Jacobs gave a copy of the consult note to the hospital's insurance billing clerk who forwarded it to Provident. Provident then mailed a copy of the note, along with other documents, to Doe's wife, the named insured under the group policy.

Doe's wife read the note which contained Dr. Jacob's finding that Doe had been sexually abused as a child. Because Doe had never told his wife or anyone else of the abuse, he claims the unauthorized disclosure of this information caused him to suffer severe emotional distress, violated his right of privacy, and resulted in the loss of society and companionship of his wife. Consequently, Doe brought this action against the hospital charging it with negligence resulting from violation of 42 C.F.R., Part 2, and public disclosure of a private fact.

## I.

On Appeal, Doe first contends the trial judge erred when he granted the hospital's motion for summary judgment on his negligence action, based on violation of 42 C.F.R., Part 2. We disagree.

This regulation is codified at 42 U.S.C. § 290dd-2 which states, in pertinent part:

> (a) Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse . . . treatment . . . which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall . . . be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this action.

Subsection (b) of the statute provides "[t]he content of any record referred to in subsection (a) may be disclosed in accordance with prior written consent of the patient with respect to whom such record is maintained." 42 U.S.C. § 290dd-2(b).

The only disclosure by the hospital was made to Provident and this disclosure was made pursuant to the authorization which was admittedly signed by Doe.[2] The written consent form is in compliance with the requirements of 42 C.F.R., Part 2, in both form and content. The form was signed by Doe, dated and witnessed, and authorized the hospital to release Due's "entire record" to Provident for the purpose of "collecting insurance." Although the hospital conceded the psychiatric consult note is not the type of record typically sent or needed to process insurance claims, the consult note was submitted to Provident for that purpose and Doe did not contest the fact that it was submitted for insurance claims purposes. Thus, we hold the trial judge correctly found Doe executed a valid consent form authorizing the release of his "entire record" in accordance with the statute.

Doe argues, however, that any alleged consent was ineffective because (1) he was not competent to execute the form; (2) he lacked the necessary information to effectively consent; and (3) the consent form was overbroad.

As to incompetence, Doe has not been adjudicated incompetent. There is no allegation in the pleadings, and the record is devoid of any evidence Doe lacked the capacity to effectively consent to the release of his medical records. *See Grapner v. Atlantic Land Tile Co.*, 307 S.C. 549, 416 S.E. (2d) 617 (1992) (the party alleging incompetence must prove by a preponderance of the evidence that he was incompetent at the time of the transaction). Doe, nevertheless, maintains that the mere fact he was committed, albeit voluntarily, to a substance abuse center showed he was unable to make a knowing and informed decision. We disagree. There is absolutely nothing in the record, be it evidence or inference, to support the position that Doe was incompetent at the time he signed the consent form. Furthermore, nothing in the

---

[2]The subsequent disclosure to Doe's wife was made by Provident, not by the hospital.

record suggests he could not understand the nature and effect of the document he signed.

Doe's contention that the consent form was overbroad is also meritless. While he admits the form complied with 42 C.F.R., Part 2, he argues filling in the form to authorize the release of his "entire record" was not "specific" as required by the regulation and the form itself. Clearly, no language could be more specific than the "entire" record as opposed to, for example, "selected records," "various records," or even "medical records." The trial judge properly held the consent form executed by Doe authorized the hospital to release whatever information was in his record to Provident to collect insurance benefits.

## II.

Doe next argues the trial judge erred when he granted the hospital's motion for summary judgment on his claim of public disclosure of a private fact. As noted above, the trial judge found Doe had signed a valid consent form authorizing the hospital to release his "entire record" to Provident. The hospital, therefore, cannot be charged with publicly disclosing a private fact to Provident, an authorized recipient, when Doe agreed to the disclosure.

Neither can the hospital be held liable for any disclosure made to Doe's wife by Provident. It was Provident, not the hospital, who sent the record to Doe's wife. While Provident may or may not have been justified in sending such a communication to Mrs. Doe, as its named insured, it is clear the hospital cannot be liable for the conduct of Provident in this regard.

## III.

Finally, Doe asserts that the trial judge erred when he refused to allow Doe to amend his pleadings during the course of the summary judgment hearing to allege a cause of action for intentional infliction of emotional distress. We hold any alleged error was harmless in light of the trial judge's additional finding that even if the amendment was allowed, he would grant the hospital summary judgment based on the evidence.

The elements Doe was required to establish to recover for the tort of intentional infliction of emotional distress are: (1) the hospital intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from its conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the hospital caused Doe's emotional distress; and (4) the emotional distress suffered by Doe was so severe that no reasonable man could be expected to endure it. *Ford v. Hutson*, 276 S.C. 157, 276 S.E. (2d) 776 (1981). Negligent infliction of emotional distress, on the other hand, is limited to bystander recovery. *See Kinard v. Augusta Sash & Door Co.*, 286 S.C. 579, 336 S.E. (2d) 465 (1985) (setting forth elements required to establish negligent infliction of emotional distress).

Nothing in the record suggests the hospital acted intentionally or recklessly when it released medical records to Doe's insurance carrier which Doe had authorized. Therefore, any error made by the trial judge in not permitting the amendment was harmless. *Cf. Gasque v. Voyager Life Ins. Co. of S.C.*, 288 S.C. 629, 344 S.E. (2d) 182 (Ct. App. 1986) (any error committed by the trial court in allowing the amendment was harmless and therefore provides no basis for reversal).

For the foregoing reasons, the order of the trial judge is affirmed.

Affirmed.

SHAW and CONNOR, JJ., concur.